(111 App. Div. 578.)

MISHKIND-FEINBERG REALTY CO. v. SIDORSKY.

(Supreme Court, Appellate Division, First Department. March 9, 1906.)

1. PROCESS—PUBLICATION—SUFFICIENCY.

Where defendant in a foreclosure proceeding was given notice thereof by publication of summons, it was immaterial that, at the time of the order of publication of the summons as against her, a supplemental and amended summons had been ordered for the purpose of bringing in the tenants of the property, and a title based upon the foreclosure was marketable.

2. SAME—DEFECTS—AMENDMENT.

In an action between the vendor and purchaser of land involving the sufficiency of the vendor's title which was based on a decree of foreclosure, it appeared that the order of publication of summons in the action of foreclosure did not comply with Code Civ. Proc. § 440, which provides that such order must contain a direction that, on or before the day of the first publication, the plaintiff shall deposit in a specified post office

one or more copies of the summons, complaint, and order. The order objected to complied with such provision, except that instead of using the word "complaint" it said "notice of object of action hereto annexed." The order was complied with by mailing the notice of object of action, and the statute was complied with by mailing the complaint. Subsequently, on notice to all the parties who had appeared, an order was entered amending the former order nunc pro tunc so that it complied with the statute. Code Civ. Proc. §§ 721–723, authorize the amendment of orders and judgments, and section 3345 provides that the rule of the common law that a statute in derogation of the common law is strictly construed does not apply to this act. *Held*, that the vendor's title was marketable, notwithstanding the irregularity.

Ingraham, J., dissenting.

Action by the Mishkind-Feinberg Realty Company against Louis Sidorsky, for specific enforcement of a contract of sale of real property. Submission on agreed statement of facts. Judgment for defendant.

Argued before O'BRIEN, P. J., and McLAUGHLIN, INGRAHAM, CLARKE, and HOUGHTON, JJ.

Arnstein & Levy (Emil Goldmark, of counsel), for plaintiff.
J. A. Seidman, for defendant.

CLARKE, J. This is a submission of a controversy upon an agreed statement of facts, pursuant to the provisions of sections 1279–1281 of the Code of Civil Procedure. The parties entered into a contract in writing and under seal, under which the defendant agreed to sell and the plaintiff agreed to buy a certain piece of land with the buildings thereon, situated in the city of New York and known as 217 East 102d street. The defendant agreed to deliver "a proper deed containing the usual full covenants and warranty for the conveying and assuring to the party of the second part, or the assigns of the party of the second part, the fee simple of the said premises free from all incumbrance except as herein stated." The plaintiff raised certain objections to defendant's title, and the sole question here is: Is the title marketable?

The defendant acquired title through mesne conveyance from one Donald, who was the purchaser upon a foreclosure sale. On the 29th of June, 1897, one Pollack, the then owner of the fee, executed and delivered his bond and mortgage to Peter Donald for the payment of $14,000 on the 29th day of June, 1902, with interest at 5 per cent. payable semiannually. Said mortgage was duly recorded. Thereafter said Pollack conveyed said premises to one Rickerson, and on May 29, 1899, Rickerson conveyed to Herman Rosenblum, who became the owner subject to said mortgage. On July 3, 1899, said Rosenblum executed a mortgage to Sigmund Cohn for $500. On October 31, 1899, Herman Rosenblum executed a mortgage to Simon Rosenblum for $3,000. This mortgage was assigned to Mollie Weinberg, and on November 2, 1900, Mollie Weinberg assigned said mortgage to Mary Rabinovitch; the assignment being recorded November 7, 1900. On November 14, 1900, Peter Donald commenced an action to foreclose the first mortgage for $14,000 for nonpayment of interest. The owner of the equity, Herman Rosenblum and his wife, Sigmund Cohn, the owner of the

second mortgage for $500, and Mary Rabinovitch, the assignee of record of the third mortgage, as well as other parties, were made parties defendant. On December 4, 1900, an order was made and ,entered directing that the summons and complaint be amended by striking out two unnecessary defendants and by adding 28 others, all of whom were tenants of the premises sought to be foreclosed; and accordingly a supplemental and amended summons and complaint were on that day issued. The said supplemental and amended summons named all the old defendants, except those two stricken out, and all the new defendants, but was directed to the new defendants only. Thereafter, and on January 29, 1901, an order was made directing that the summons be served upon the defendant Mary Rabinovitch by publication. The affidavits upon which the order was made sufficiently showed the nonresidence of said defendant, and that her then address was No. 12 Fair street, Paterson, N. J. The order provided:

"That service of the summons in the above-entitled action upon the said defendant Mary Rabinovitch be made by publication thereof in two newspapers. * * * That on or before the day of the first publication as aforesaid plaintiff deposit in the general post office of the borough of Manhattan, city, county and state of New York, a copy of the summons and notice of object of action hereto annexed and of this order contained in a securely inclosed postpaid wrapper directed to the said Mary Rabinovitch at No. 12 Fair street, Paterson, New Jersey."

There was deposited in the post office, directed as required, on the 16th day of February, 1901, the summons as originally made and served on the other defendants; that is, containing the name of Mary Rabinovitch and others, but not including the 28 tenants as to whom the supplemental summons was directed to be issued. To this summons was attached a notice directed to the defendant Mary Rabinovitch, as follows:

"The foregoing summons is served upon you by publication, pursuant to an order of the Honorable P. Henry Dugro, a justice of the Supreme Court of the state of New York, dated the 29th of January, 1901, and filed with the complaint in the office of the clerk of the county of New York on the 5th day of February, 1901, at the courthouse in the borough of Manhattan, New York."

There was also inclosed and mailed notice of object of action, notice of order of publication, complaint, affidavits, and order of publication, and order amending order of publication. Thereafter, and on May 3, 1901, judgment of foreclosure and sale was entered and a referee appointed to sell, who on May 28, 1901, after due notice of sale, sold the premises to the plaintiff in said action, Peter Donald, for $13,400, resulting in a judgment for deficiency for $3,061.52.

The first objection raised was that, at the time of the order of publication of the summons as against Mary Rabinovitch, a supplemental and amended summons had been ordered to be issued containing the names of the 28 tenants of the premises; that the publication and depositing in the post office of the original summons was not the publication of the summons in the action. It seems sufficient to say that, so far as she was concerned, she was named in the original summons, and, being summoned to defend the action on her own account, it does not seem a

matter of moment that the names of the tenants of the property, made parties only for the purpose of foreclosing their rights, if any under their tenancies, could in any way affect her.

The second objection was that the order of publication did not conform to the provisions of section 440 of the Code of Civil Procedure. The part of that section material to this objection is as follows:

"It [the order] must also contain  *  *  *  direction that on or before the day of the first publication, the plaintiff deposit in a specified post office one or more sets of copies of the summons, complaint and order, each contained in a securely closed postpaid wrapper directed to the defendant at a place specified in the order."

The order complied with that provision, with the exception that, instead of the word "complaint," it said "notice of object of action hereto annexed." As matter of fact, the order was complied with by mailing the notice of object of action, and the purpose of the statute was complied with by mailing also the complaint. Subsequent to this objection being taken, and on August 19, 1904, on notice to all the parties who had appeared, an order was made and entered in said action amending said order nunc pro tunc as of the original date by striking out the words "notice of object of action" and inserting the word "complaint," upon proof being presented that a complaint as well as notice of object of action was mailed to the defendant Mary Rabinovitch, and that the words "notice of object of action" were used in said order by oversight and mistake and were due to a clerical error, and that the word complaint was intended to be used.

Plaintiff claims that no jurisdiction was ever acquired over Mary Rabinovitch because the order of publication was jurisdictionally defective. Two recent cases in this court are cited by plaintiff. In Eleventh Ward Bank v. Powers, 43 App. Div. 178, 59 N. Y. Supp. 314, it appeared that the order did not specify the post office in which the copy of the summons, complaint, and order were to be deposited. It did not direct that a copy of the order be mailed to the defendant to be served. It did not direct that the order be served on or before the day of the first publication of the summons. No copy of the order was mailed to the defendant, and this court held on those facts that there was no service. In Stuyvesant v. Weil, 41 App. Div. 557, 58 N. Y. Supp. 697, the objection was that the defendant's title was defective, as the defendant claimed, under a certain mortgage foreclosure wherein the owner of the equity of redemption "was not named as a party defendant in either the summons or the complaint" and did not appear therein prior to the entry of judgment, and the court, therefore, had no jurisdiction of the person of said owner. It appeared that the name of the owner of the equity was Mary J. Stockton, and that in the foreclosure proceedings the summons and complaint named Emma J. Stockton, instead of Mary J. Stockton, and as so written they were served on Mary J. Stockton, who did not, however, appear or answer at any time before the judgment or sale. Subsequently an ex parte order was entered "that the summons and complaint, and all other papers herein, be amended by striking out the name 'Emma J. Stockton' where the same appears, and inserting in lieu thereof the name

'Mary J. Stockton' as one of the defendants in this action." No amended notice of pendency of action was filed, nor was any amended or supplemental summons issued or served. The court said:

"The person sued by the wrong name never appeared, and, unless the court obtained jurisdiction, it is difficult to determine upon what principle it could amend and thereafter proceed to determine the rights of the parties. * * * If here, intending to sue Mary J. Stockton, the summons had included the name of Emma J. Brown, it would not be claimed in a suit intended to affect the former, and in which she was actually served with the summons directed to Emma J. Brown, that the court, without her appearance, thereby acquired jurisdiction over her. 'Emma J. Stockton' may be nearer to the name of the person intended than 'Emma J. Brown,' yet, if it is sufficient merely to have the right persons served, regardless of having them correctly designated in the summons, then seemingly there would be nearly as strong argument in favor of sustaining the jurisdiction of the court in one case as the other. Mary J. Stockton would be no more required to attend a summons issued against Emma J. Stockton than she would be if it were issued against Emma J. Brown. In each instance it is directed to another person"—and held the title unmarketable.

Upon appeal to the Court of Appeals (167 N. Y. 421, 60 N. E. 738, 53 L. R. A. 562) the judgment of this court was unanimously reversed; the learned chief judge concluding his opinion with these words:

"We have not alluded to the decisions of the several Special and General Terms which the Appellate Division felt called upon to follow. Their foundations were laid long before sections 721 and 723 of the Code came into existence as marking features of a distinct legislative policy to stop the sacrifice of things of real substance upon the altar of mere technicality, and hence a discussion of them can serve no useful purpose."

It seems to me that beyond question it would be "the sacrifice of things of real substance upon the altar of mere technicality" to destroy a title to real estate because an order required the deposit in the post office of a notice of the object of the action, instead of a copy of the complaint, when, as matter of fact, not only the notice, but the complaint as well, and all of the other papers required by the Code to be served, were so deposited. An order may not be made nunc pro tunc which will supply a jurisdictional defect by requiring something to be done which has not been done; but, where the thing itself has been done, when the object looked at by the Code in requiring it to be done has actually been accomplished, the power to make the order express the fact does exist. The object in requiring that the order should contain a direction that the complaint should be deposited in the post office was that the complaint should be so deposited in order that the defendant might receive it and be placed in position to defend his rights upon the information so conveyed that they were attacked. That was done in the case at bar, and the proper and necessary papers were sent to the then present address of the defendant, which address appeared upon the recorded assignment of the mortgage in question, recorded only seven days before the commencement of the suit, and stated by her attorney who attended to said assignment to be her then address.

Considering the facts in the case at bar, and considering not only the provisions of sections 721, 722, and 723 of the Code of Civil Pro-

cedure, but section 3345 as well, which expressly provides that "the rule of the common law that a statute in derogation of the common law is strictly construed does not apply to this act," and applying the doctrine of the Court of Appeals as expressed in the Stuyvesant Case, supra, I am of the opinion that the objections to the title are not well taken, and that judgment should go for the defendant upon this submission, with costs. All concur, except INGRAHAM, J., who dissents.

INGRAHAM, J. (dissenting). I do not think that a purchaser should be compelled to accept this title. The order of publication concededly fails to comply with section 440 of the Code of Civil Procedure. That section is mandatory and provides that the order must contain a direction that on or before the day of the first publication the plaintiff deposit in a specified post office one or more sets of copies of the summons, complaint, and order, contained in a securely closed postpaid wrapper, directed to the defendant at a place specified in the order. This is not an order of the court, but an order of a judge, and it has been many times held that the order, to give to the court jurisdiction in the action, must strictly comply with this mandatory provision of the statute. The summons was published under this order, and the sole jurisdiction of the court to subsequently decree a foreclsoure of the mortgage and a sale of the defendant's property, who was sought to be served under this order, is the publication of the summons as therein directed. This defendant is not now before the court, and the judgment in this action would not be binding upon her. The purchaser was entitled to a marketable title, free from serious doubt. I do not think that a title based upon a judgment entered in an action where the summons was served upon the owner of the equity of redemption pursuant to an order which fails to comply with this section of the Code is a marketable title. The order amending the order of publication entered long after the judgment was entered, not made by the judge who signed the original order, I do not think cures the defect, if the failure of the original order of publication was insufficient to give the court jurisdiction in the action.

I think therefore that, as the plaintiff should not be compelled to take this title, judgment should be directed for the plaintiff upon this submission